## Colyer v. Colyer.

(Decided February 25, 1930.)

W. B. MORROW for appellant.

WM. CATRON and J. L. COLYER for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

Ebb Colyer, the appellee, filed his petition against his wife, Loretta Colyer, the appellant, seeking a divorce on the statutory ground that she had been guilty of such lewd and lascivious behavior as to prove her to be unchaste. Appellant filed an answer and cross-petition. She denied the allegations of the petition, and alleged, as grounds for a divorce, that her husband had a confirmed habit of drunkenness, and that he had behaved towards her in such a cruel and inhuman manner as to show a settled aversion to her, or to destroy permanently her peace and happiness. She prayed for alimony in the sum of $2,000. The chancellor considered the record, and granted appellee a divorce, and denied appellant any relief.

The appellant contends that the chancellor should not have granted the divorce to appellee, and that she is deprived, therefore, of her right to recover alimony. No appeal can be taken to reverse a judgment granting a divorce. Section 950-1, Ky. Stats. But where the chancellor refuses to award alimony, this court has jurisdiction to pass on that question. Jones v. Jones, 205 Ky. 538, 266 S. W. 48.

It is urged by appellant that the chancellor erroneously entered a judgment granting a divorce to the husband because the provisions of section 2119, Ky. Stats., were not complied with. This section provides that two witnesses or one and strong corroborating circumstances shall be necessary to sustain the charge of adultery, or lewdness. It further provides that the credibility or good character of such witnesses must be personally known to the judge, or to the officer taking the deposition, who shall so certify, or it must be proved. It is insisted that the credibility or good character of the witnesses who testified to the improper conduct of the wife

in this case was not certified by the officer taking the deposition; that it was not proved and it was not personally known to the judge. The credibility or good character of the two witnesses who first testified was certified by the officer taking the depositions. Other witnesses who testified on the same point were without such a certificate of good character. Neither was there any proof on the question of character, and the chancellor made no statement as to his knowledge on that point, and the circumstances are not such as to show that he had any knowledge of the credibility or good character of these witnesses. In the case of Lewis v. Lewis, 224 Ky. 18, 4 S. W. (2d) 1106, it was held that the credibility or good character of the witnesses must be established in one of the three ways provided by the statute. In the case of Traylor v. Traylor, 227 Ky. 468, 13 S. W. (2d) 486, it was held that, in the absence of proof of strong, corroborating circumstances, the evidence of one witness is insufficient to authorize a decree of divorce on the ground of adultery. It is insisted by appellant that the testimony of the two witnesses whose good character was properly certified was not sufficient to establish lewd and lascivious conduct. The first of these witnesses was Cloda Hood. She was a daughter of appellant and appellee. She testified that her mother left home about the 9th day of December, 1926, and that she had never returned. She stated that a certain man visited the home of her father and mother many times day and night, and that she had heard her mother say complimentary things of this man. She stated that this man left his home the day before her mother left home, and that later she received letters from her mother mailed in Detroit. Ad Colyer, the other witness, whose good character was properly certified, stated that many times he saw men at the home of the parties to this appeal when he knew they had no legal business there and when the husband was not at home. He had seen the man mentioned above and appellant together talking at the yard fence. He stated that the appellant and the man left Pulaski county about the same time, and that they have not returned. The man was married and left his family. It is suggested that this was not sufficient evidence to establish a case in favor of the husband, based on lewd and lascivious conduct. Perhaps that is true, but counsel overlook the letters referred to by the witness, Cloda Hood. The witness Cloda Hood (in the second deposi-

tion she is described as Clara Hood) was recalled, or rather offered as a witness in behalf of the appellant in an effort to establish her charges against the appellee. She introduced two letters which she stated that she had written to her mother at the instance and request of her father. In one of the letters, which is undated, she depicted to her mother the improvements in the home which the father had made since she left. The letter is a plea to her to return home. It recites that appellee had stated that, if she would return home, he would allow her to have the new car, and that he would never touch it, and that he would allow her to come and go whenever she pleased. He apologized for any mistreatment of her, and it was stated that he had not touched a drop of whisky or gambled since she left. The letter then refers to a visit of appellee to "Grandma," who had cried and talked to him about appellant and who had expressed the great hope that she would return. A postscript was added to tell appellant that appellee said he could not live without her. Again she wrote for her father another letter in which she advised her mother that her father had discovered her address and had requested her to write for him. She then used this significant language in the letter: "Daddy says come on back. He has got it fixed so everyone will think you are away in a hospital so if, you want to come back you can. And if you don't he said there was no one else he wanted and he was not going to get a divorce for five years so you will not be divorced by him."

She then restated the improvements that had been made in the house and added the sentence, "He said if you would come back he would let you handle all the money yourself and run things just like you wanted them."

The appeals of the husband to his wife asking that she return to him and his children fell on deaf ears. The chancellor doubtless gave weight to these letters in connection with the evidence of the two witnesses, whose good character had been certified. It is established, therefore, by the unquestioned evidence that appellant left the home of appellee; that prior to her leaving a man had been visiting her night and day and at times when the husband was away at work; that they left about the same time, he leaving his family and she leaving hers; that they had never returned; that she was living such a life as made her husband believe that the truth

should be concealed, and for that reason he was willing to give currency to a false report to the effect that she had been away in a hospital. The chancellor, therefore, was not wholly without proof to sustain his judgment.

If the testimony of the other witnesses may be considered, the cause of action alleged by the husband in his petition is abundantly established. No exceptions were filed to the depositions, as required by the provisions of section 586 of the Civil Code of Practice. Exceptions to depositions other than to the competency of the witnesses, or to the relevancy or competency of the testimony, shall not be regarded unless the exceptions are filed and noted on the record before the commencement of the trial and before or during the first term of the court after the filing of the depositions. It appears, therefore, that the depositions were read without any exceptions thereto. If appellant desired to call the attention of the court to the failure of the officer taking the depositions to certify to the good character of the witnesses, he should have filed exceptions. The court then would have had opportunity to ascertain from personal knowledge the credibility or the good character of the witnesses. The case of Hehr v. Hehr, 203 Ky. 727, 263 S. W. 33, held that a wife was not entitled to alimony when she had despoiled the marriage bed by failing to observe the marital obligations, and that she must suffer the consequences, since the law will afford her no relief. We cannot disturb the judgment of the chancellor granting the divorce, and on the record we are unwilling to say that it was unwarranted.

Judgment affirmed.