## Luttrell v. Luttrell.

Nov. 30, 1943.

Pleas Sanders for appellant.

V. R. Logan for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

The appellant and appellee were married January 13, 1942, and lived together until about April 1, 1942.

At the time of their marriage appellant was twenty years old and appellee was fourteen years old. In the early part of July, 1942, appellant filed this action against appellee for a divorce, alleging in his petition that she had been guilty of acts of adultery and lewd and lascivious conduct. Appellee filed her answer in which she denied the allegations of the petition. The evidence was taken in open court, except that of appellant, which was taken by deposition. Upon submission of the cause for trial the chancellor refused to grant appellant a divorce and dismissed his petition. Appellant has appealed, insisting upon a reversal of the judgment upon the ground that under the evidence produced the chancellor should have granted him the relief prayed in the petition.

Soon after the parties were married they went to the city of Louisville, Kentucky, and lived in the home with appellant's brother, J. D. Luttrell. Dora Luttrell, wife of J. D. Luttrell, testified that while appellant and appellee were living in the home with her and her husband, she noticed certain conduct on the part of her husband and appellee which created some suspicion in her mind. The witness further said that she and appellant discussed the matter and appellant told her that if she ever saw anything wrong between her husband and appellee to tell him about it, and further said: "I saw plenty and I told him about it." She said that on or about the night of April 2, while appellant was at work and absent from her home, her husband, J. D. Luttrell, suggested that she and appellee go out to the car with him where it was parked on the street or on the premises and listen to the radio, which they did, and she took her baby with them. After being seated in the automobile the baby began to cry and she took the baby back into the house, leaving her husband and appellee in the automobile; that in a few minutes appellee came to the house for a short time and then returned to the automobile and she, the witness, returned to the automobile a few minutes later and saw J. D. Luttrell and appellee committing the act of sexual intercourse. She said that she did not disturb them or let them know that she was there, but returned to the house; that when her husband came into the house she asked him about the matter and he first denied it and then virtually admitted it, saying: "It just as well have been me as anybody." She said she talked to ap-

pellee about the matter and she did not deny it. She further stated that when appellant came home she told him about the conduct of his wife and her husband J. D. Luttrell, and when appellant asked her husband about it he denied it to him.

J. D. Luttrell testified as a witness for appellant and admitted that he had sexual intercourse with appellee at the time and occasion testified to by his wife, Dora Luttrell, and related substantially the same state of facts as stated by Dora Luttrell. He said that he had an understanding with appellee for her to come back to the car after his wife went to the house, and when she came back and got in the car they had intercourse and his wife was standing within a few feet of the car but he did not know at the time that she was there. He and his wife, Dora, both admitted that they had a little quarrel or trouble about the matter but did not separate. He said that appellee had been making advances or gestures toward him for some time, but he resisted having intercourse with her, she being his brother's wife, until on the occasion referred to. Dora Luttrell was recalled and, being asked again about what was said or done between her and her husband because of the conduct between him and appellee, she said the reason she did not leave him was because it was about a month before her last baby was born and she had no place to go.

Appellee, testifying in her own behalf, denied that she had any act of intercourse with J. D. Luttrell, but admitted being in the car with him on the occasion referred to by him and Dora Luttrell, and further said that when Dora Luttrell left the car on the first occasion to take the baby to the house she intended to go with her but had taken her shoes off in the car, and while putting them on Dora went on and left her. She said she stayed in the car about five minutes and then started to leave and J. D. Luttrell caught her by the arm and locked the car door and threw her down in the car and attempted to have intercourse with her but did not succeed, and as soon as she got loose from him she went on into the house. This, of course, was denied by J. D. Luttrell. Appellee said when she and appellant first married he kept her at his mother's home for awhile, but that his mother was not good to her and he then took her to Louisville to the home of his brother. She said that after the occurrence testified to by the witnesses

he took her back to her mother's home and came to see her on a few occasions, but said that they never had any marital relations after the occurrence on the night of April 2, testified to by J. D. and Dora Luttrell. She said he was good to her and treated her kindly but told her that he wanted a divorce. She further said that for sometime appellant, J. D. Luttrell and his wife, Dora, had been talking for about three weeks, making up something to tell on her, and the story they told was not the truth. She further denied that she had made any advances toward J. D. Luttrell or was guilty of any conduct toward him referred to by him and Dora Luttrell. According to her evidence she was not guilty of any of the acts of misconduct testified to by the witnesses.

The appellant gave his deposition in August, 1942, which was read to the court as his evidence. He was asked why he left appellee and he said that it was because of the information he received from his brother and Dora Luttrell. He said that when he asked appellee about the matter she denied having intercourse with his brother, but she said that after she got in the car he locked the doors and assaulted her, but she did not tell him anything about it until after he received the information from J. D. and Dora Luttrell. He said that he did not have any marital relations with her after he received this information, although he admitted that he was friendly with her and took her to her mother's home and visited her a time or two at her request. On cross-examination appellant was asked if the separation of him and his wife was not brought about by his mother, and he answered in the negative and insisted that it was brought about because of her conduct with his brother and that otherwise he would not have left her. It also appears that appellant was called or expected to be called to the army along about the time of the separation. It is argued in brief for appellee that the story told by J. D. and Dora Luttrell is untrue, and that they and the mother of appellant and J. D. Luttrell "framed" appellee and brought about the separation of the parties in order that the mother of appellant and J. D. Luttrell might get appellant's army allowance and the government insurance in the event of his death while in the army. Appellant and his other two witnesses were interrogated along that line but denied entertaining any such motive.

40

It is a known rule that this court will not reverse a finding of fact by a chancellor where the evidence is such that we entertain no more than a doubt as to the truth of it. Here the evidence of two witnesses is contradicted by the evidence of only one witness, but it must not be forgotten that it is also the rule that a court or a jury is not necessarily required to believe a majority of the witnesses as against the minority. The chancellor as well as a jury, may, in some circumstances, believe one witness and disbelieve two witnesses, as was done in the present case, unless, however, in the peculiar circumstances of the particular case, it appears that his finding is arbitrary or he abused a sound discretion in weighing and judging the evidence. The appellee, J. D. and Dora Luttrell testified before the chancellor who lived in the community, and he had the benefit of facing the witnesses and observing their countenance, demeanor and conduct on the witness stand, which very often is an important factor in weighing the credibility of witnesses and arriving at a proper consideration to be given their evidence. This is an advantage which this court does not have by merely reading the evidence from paper. In the circumstances it is doubtful whether or not it can be said that the chancellor's finding is contrary to the preponderance of the evidence. But, be this as it may, we find that section 2119, Carroll's Kentucky Statutes, KRS 403.030, was not complied with. This section of the statutes provides: ''Two witnesses, or one witness and strong corroborating circumstances, shall be necessary to sustain the charge of adultery or of lewd and lascivious behavior. The credibility or good character of the witnesses must be personally known to the judge, or personally known to and certified to by the officer taking the deposition, or else it must be proved.'' The credibility of the witnesses was not proven nor is there any certificate of any officer or a finding by the court as required by this section of the statutes. In Lewis v. Lewis, 224 Ky. 18, 4 S. W. (2d) 1106, it was held that where the credibility of witnesses must be established, the record must affirmatively show such establishment by proof, certification of the officer, or a finding by the court. See also, to the same effect, Colyer v. Colyer, 233 Ky. 752, 26 S. W. (2d) 511. There was no attempt made to prove the credibility or good character of the witnesses, nor does the judgment recite that the credibility or good character of the witnesses

was personally known to the judge. Furthermore, the fact that the chancellor refused to grant appellant a divorce creates a strong inference that he did not consider the witnesses credible, otherwise he would have granted the divorce. It follows, therefore, that appellant was not entitled to a divorce upon the specific charge of adultery.

The petition charges, in general terms, lewd and lascivious conduct in addition to the act of adultery. Dora Luttrell testified that she noticed certain conduct on the part of J. D. Luttrell and appellee which created a suspicion in her mind previous to the specific act of adultery referred to in the evidence, but the only act she mentioned in her evidence was that appellee got in the bed with her husband and put the baby between them, but the cover was over them. It appears that this was in the presence of Dora Luttrell and was not shrouded by any secrecy. It must be admitted that such conduct was at the least indiscreet, and indeed reprehensible if committeed by a woman of mature age and experience. But, we do not think that a fourteen year old child should be held to the same strict accountability for her conduct as might be expected of a person of mature age and experience. In the circumstances we think that the evidence is as consistent with innocence as with guilt of any wrongful intent. We do not think that these minor acts, though imprudent, were sufficient to warrant a divorce upon the grounds of lewd and lascivious conduct. In the status of this record we think that appellant failed to show himself entitled to the relief sought.

Judgment affirmed.